# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 3:17-cr-313 |
| MICHAEL LAURY, | (JUDGE CAPUTO) |
| Defendant. | |

## MEMORANDUM

Presently before me is a Motion to Suppress (Doc. 107) and a Motion to Dismiss the Indictment, or, in the alternative, to Obtain a Bill of Particulars with Respect to Count One of the Indictment (Doc. 109). Regarding the Motion to Suppress, the Defendant, Michael Laury, alleges that the search warrant for the structure located at 75 Park Avenue, Wilkes-Barre, Pennsylvania (the "Park Avenue Residence") lacks sufficient probable cause, fails the particularity requirement, and was not reasonably executed by law enforcement officials. (*See* Doc. 108). With respect to Laury's Motion to Dismiss, he argues that the Indictment does not adequately inform him of what he must be prepared to defend at trial. (*See* Doc. 109). In the alternative, Laury requests a Bill of Particulars that identifies factual information pertaining to his offense. (*Id.*). I will deny Laury's Motion to Suppress because the search warrant is valid and was reasonably executed and his Motion to Dismiss, and in the alternative to Obtain a Bill of Particulars because it adequately apprises Laury of what he must be prepared to defend at trial.

### I. Background

During a corresponding federal investigation pertaining to a local bank robbery, a Cooperating Witness ("CW") informed the FBI about the location of a methamphetamine laboratory where he went with his co-conspirators after the robbery to purchase heroin and methamphetamine. (*See* Doc. 108, at 3-5). The CW went on to identify photographs of the Park Avenue Residence as the location of

the methamphetamine laboratory, describe the interior of the residence, and explain the apparatuses inside the residence, which were indicative of a methamphetamine production. (Doc. 113-3, at 7-8).

Upon an application from law enforcement, Magistrate Judge Joseph Saporito issued a search warrant for the Park Avenue Residence. (*See* Doc. 108-1, at 1). During the execution of this search warrant, the FBI agents and the Pennsylvania State Police Clandestine Laboratory Emergency Response Team found an operational methamphetamine laboratory in the basement cellar of the Park Avenue Residence. (*See* Doc. 113-1, at 2-4). At this time, the search team arrested various individuals present at the Park Avenue Residence, including Laury. (*See* Doc. 108, at 8). Following this search, Laury was detained. He signed a *Miranda* waiver (Doc. 113-2) and submitted to a recorded interview where he stated that he lived at the Park Avenue Residence and permitted others to stay there, but denied knowledge of the methamphetamine laboratory. (Doc. 113, at 4). The grand jury subsequently issued a one count indictment charging Laury, among others, with maintaining and renting a drug-involved premise in violation of 21 U.S.C. § 856 (a)(1). (Doc. 1).

## II. Discussion

Laury, as stated, has filed pretrial motions to suppress evidence and to dismiss Count One of the Indictment. I will address the issues in that order.

### A. Motion to Suppress Evidence

Laury's Motion to Suppress all of the evidence seized at the Park Avenue Residence during the execution of the search warrant will be denied. Laury's motion is based on three arguments: (1) the search warrant was not supported by probable cause, (2) the search warrant was not sufficiently particular and the execution of the search was unreasonable, and (3) his subsequent statements to the police qualify as "fruit of the poisonous tree" given that they were made subsequent to his arrest, which occurred immediately after the allegedly unlawful

search of the Park Avenue Residence. (*See* Doc. 108, at 10-20). Finally, Laury argues that he is entitled to a hearing under *Franks v. Delaware*, U.S. 154 (1979) due to omissions made in the affidavit of probable cause attached to the search warrant application for the Park Avenue Residence. (Doc. 108, at 19-20).

The Fourth Amendment guarantees: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. "What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985). Here, (1) there was a substantial basis in the probable cause affidavit to issue a search warrant, (2) the search warrant was sufficiently particular and executed reasonably as there was no indication that the Park Avenue Residence contained multiple separate units, and (3) the "fruit of the poisonous tree" doctrine is not applicable because law enforcement officials lawfully executed the search warrant and arrested Laury. Moreover, a *Franks* Hearing is unnecessary, because the probable cause affidavit did not contain any material omissions or false statements.

### 1. The Search Warrant is Based on Sufficient Probable Cause.

Laury alleges that the search warrant was not supported by probable cause, because it was based on information provided by an unreliable witness, *i.e.* the CW. (Doc. 108, at 12). In reviewing the initial probable cause determination made by a magistrate judge, a district court will conduct a deferential review to determine whether "the magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983). "When presented with an application for a search warrant, the magistrate must 'make a practical, common-sense decision whether, given all the circumstances set forth in the

affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (quoting *Gates*, 462 U.S. at 238). Probable cause need not be supported by direct evidence, but "can be, and often is, inferred from the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide evidence." *Id.* (quotations omitted). "A magistrate may issue a warrant relying primarily or in part upon the statements of a confidential informant, so long as the totality of the circumstances gives rise to probable cause." *Id.* at 555. An informant's "veracity" and "reliability" are relevant qualities to this determination, but "these elements should [not] be understood as entirely separate and independent requirements to be rigidly exacted in every case." *Id.* (quotations omitted). "[A] deficiency in one [element] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id.* (quotations omitted). Police corroboration of an informant's information is "an important method for establishing a tip's reliability." *Id.* at 555. The Court of Appeals for the Third Circuit further stated that it takes guidance from the Supreme Court's decision in *Gates*, "which instructs that '[if] an informant is right about some things, he is more probably right about other facts.'" *Id.* at 557 (quoting *Gates*, 462 U.S. at 244).

Additionally, "Courts accord great weight to [an informant's] first-hand observations shortly before a search." *United States v. Woods*, 254 F. App'x 889, 892 (3d Cir. 2007) (noting that "the absence of additional corroboration does not undermine the finding of probable cause" where the informant provided "information [that] was not random, easily predicted or accessible to the general public," because it was based primarily on the informant's first-hand observation of the manufacture of methamphetamine in her home); *see also United States v. Ramsey*, No. 1:12–cr–00310–3, 2013 WL 6388518, at *3 (M.D. Pa. Dec. 5, 2013) (finding that there was a sufficient showing of probable cause in an affidavit,

4

because it contained an informant's firsthand account of how he purchased drugs from the Defendant's alleged residence, the location of the residence, and additional drug quantities inside the residence).

Considering the totality of circumstances, the search warrant for the Park Avenue Residence was supported by sufficient probable cause. The Government submitted an affidavit of probable cause based largely on the information provided by the CW. (*See* Doc. 113-3). In this affidavit, FBI Agent Joseph F. Noone explains that he co-supervised the investigation that gave rise to the instant search warrant application. (*Id.* at 2). The affidavit introduces Agent Noone, his career history, and involvement with the investigation of the Park Avenue Residence. (*Id.* at 1-3). Then, it describes the ingredient list and directions for methamphetamine creation and ingestion, including the tools necessary for each process. (*Id.* at 3-5). Next, the affidavit explains the nature of the investigation of the Park Avenue Residence, including the use of a CW. (*Id.* at 6). The relevant details include the CW's first hand account of his arrangement to purchase methamphetamine from unidentified individuals at the Park Avenue Residence and his observation of their methamphetamine laboratory. (*Id.* at 7). The CW further explained that he believed the laboratory had been in operation "for a long period of time" given the amount of materials strewn about the residence, *e.g.* plastic bottles with protruding hoses, coffee filters, bottles with a milky substance bubbling inside, and lithium batteries. (*Id.* at 7-8). He also described the interior of the residence, which appeared to be under construction due to the dismantled walls and "wide-open floor plan." (*Id.* at 7). The materials noticed by the CW are consistent with the aforementioned methamphetamine recipe provided by Agent Noone. *(See id.* at 3-5). Finally, the affidavit concludes with Agent Noone's discussion of his experience with narcotics' distributors, including how they often store contraband in "secure locations within residences over which they exercise dominion and control" and "the residences of their confederates, paramours, and relatives, and their stash

houses." (*Id.* at 9).

Laury's specific arguments as to the unreliability of the CW are: (1) the CW has a criminal record that includes *crimen falsi* offenses, (2) law enforcement officials had not corroborated the CW's information regarding the Park Avenue Residence, and (3) the CW had never been used as an informant. (*See* Doc. 108, at 10-13). These arguments are unavailing. First, the affidavit of probable cause acknowledges that the CW "has prior convictions for possession of . . . controlled substances and thefts" and is presently incarcerated. (Doc.113-3, at 6). Contrary to Laury's assertion, prior criminal convictions for theft are not *crimen falsi* offenses under Federal Rule of Evidence 609(a)(2). *See* Fed. R. Evid. 609 advisory committee's note ("The Conference Committee provided that by 'dishonesty and false statement' it meant 'crimes such as perjury, subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the [witness's] propensity to testify truthfully.'"); *see also United States v. Johnson*, 388 F.3d 96, 100 (3d Cir. 2004) (stating "Rule 609(a)(2) must be interpreted narrowly to apply only to those crimes that, in the words of the Conference Committee, bear on a witness's propensity to testify truthfully."). Second, the affidavit provides a basis for the CW's reliability by explaining that the "CW's information has proven accurate and has been corroborated, where possible, in the following manner: (a) through interviews with other cooperating individuals; (b) through record checks, and (c) through surveillance." (Doc. 113-3, at 6). Specifically. Agent Noone showed the CW a photograph of the Park Avenue Residence, which he positively identified as the place where he went to purchase methamphetamine. (*Id.* at 7). Third, the fact that the CW had not been used as an informant previously is not dispositive of his credibility. *See Stearn*, 597 F.3d at 555 (stating that it was error to discount the reliability of an informant, because, among other things, there was no history of

6

past cooperation by the informant). Therefore, Magistrate Judge Saporito did not err in issuing a search warrant for the Park Avenue Residence based on the information provided in the application.

### 2. The Search Warrant Meets the Particularity Requirement and Law Enforcement Executed the Search in a Reasonable Manner.

With respect to the particularity requirement, Laury raises two separate constitutional issues: (1) the validity of the warrant and (2) the reasonableness of its execution. (Doc. 108, at 13-17). I will address each argument in turn.

Laury claims that the search warrant is not particularized, because it "does not delineate the specific apartment entered by the CW" where the methamphetamine laboratory was located and allows for a search of the entire Park Avenue Residence. (Doc. 108, at 15). "The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.'" *Maryland v. Garrison,* 480 U.S. 79, 84 (1987). "[T]he scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Id.* (quotations omitted). The warrant's validity "must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate." *Id.* at 85. If the officers knew or should have known that there were two separate dwelling units in a structure, then they are obligated to limit the scope of the requested warrant to the dwelling that they have probable cause to believe contains contraband. *Id*. When a warrant "authorize[s] a search that turn[s] out to be ambiguous in scope," [it] will, nevertheless, be upheld against a particularity challenge if the warrant described the structure as it was known or should have been known to the officers after reasonable inquiry under the circumstances." *United States v. Ritter*, 416 F.3d 256, 266 (3d Cir. 2005).

Here, the search warrant was sufficiently particular, because the law

enforcement officers had no reason to suspect that the Park Avenue Residence was a multiple unit dwelling at the time Magistrate Judge Saporito issued the search warrant. The CW explained that he arranged to purchase methamphetamine at the Park Avenue Residence. (Doc. 113-3, at 7). He described the structure as "a residence located next to the parking lot" of a funeral home. (*Id.*). Agent Noone printed out a photo of the structure he described, and the CW positively identified it as the location where he made the drug purchase. (*Id.*). The CW went on to recount that he entered the dwelling "to the left side of the residence down several steps . . . through a side door." (*Id.*). He further stated that the inside of the residence appeared to be "under construction with most interior walls torn down providing a wide-open floor plan." (*Id.*). The photographs of the Park Avenue Residence that were attached to the search warrant application seemingly depict a single-family home with three stories, a three car garage, one front door, and one street address number. (*See* Docs.113-4, 113-5, 113-6, 113-8). The Park Avenue Residence also appears to be located on a street with other similarly constructed single-family homes. (*See* Doc. 113-4). None of this information would indicate that the Park Avenue Residence was a multiple unit dwelling.

     Laury, however, contends that the presence of multiple entrances to the residence, fire escapes from the second floor and the first floor of the home, and four utility outlets located outside the side door to the basement indicate that the Park Avenue Residence was a multiple unit dwelling. (*See* Doc. 108, at 15-16). He also argues that the CW admitted to hearing "Tweak," one of the individuals present while he was buying methamphetamine at the house, say "to be quiet because the owner of the residence was sleeping in a room inside the residence." (*Id.* at 16). These arguments, however, fail to demonstrate the investigating officers should have known that the Park Avenue Residence was a multiple unit structure. The fact that a residence has multiple entry ways and multiple occupants is not necessarily evidence that a structure is comprised of multiple units. *See United*

*States v. Roman-Polanco*, No. 3:17-CR-78, 2019 WL 1548899, at *14 (M.D. Pa. Apr. 9, 2019) (explaining that the existence of multiple doorways is not dispositive evidence that a structure contains multiple separate units). Moreover, in the affidavit of probable cause, Agent Noone specifically stated that in his professional experience, narcotics distributors often hide contraband in "secure locations within residences over which they exercise dominion and control" and "the residences of their confederates, paramours, and relatives, and their stash houses." (Doc. 133-3, at 9). Thus, the search warrant is valid based on the information that officers disclosed and had a duty to disclose to the magistrate judge.

Laury also argues that the execution of the warrant was unreasonable, because the officers should have stopped searching the structure after realizing that the Park Avenue Residence contained separate units. (Doc. 108, at 16-17). When an officer knows or should have known that there are separate dwellings contained in a property that they are authorized by a warrant to search, they are "obligated to either limit the search to those areas clearly covered by the warrant or to discontinue entirely their search." *Ritter*, 416 F.3d at 266.

In the instant case, the search conducted was reasonable, because the search team did not encounter any indicia of multiple units over the course of their search. From the outset of the search, the outside doors of the Park Avenue Residence did not indicate the structure was separated into more than dwelling space. (*See* Docs.113-4, 113-5, 113-6, 113-8). Upon entering the structure, the search team encountered a residence that appeared to be under construction, as there were rooms filled with debris, many interior walls had been demolished, and few areas seemed habitable. (*See* Docs. 113-9, 113-10, 113-11, 113-12, 113-13). Due to the lack of evidence to suggest that the Park Avenue Residence was a multiple unit structure, the search was reasonable and there is no need for an evidentiary hearing on the matter.

Laury further alleges that the post-arrest statements he made must be

excluded under the "fruit of the poisonous tree" doctrine, because the execution of the search warrant at the Park Avenue Residence, which lead to his arrest, was not reasonable. (*See* Doc. 108, at 17-18). The "fruit of the poisonous tree" doctrine provides that "[e]vidence obtained as a result of a Fourth Amendment violation ordinarily must be suppressed as 'fruit of the poisonous tree.'" *United States v. Wade*, 628 F. App'x 144, 148 (3d Cir. 2015) (quoting Wong *Sun v. United States*, 371 U.S. 471, 487–88, 83(1963)). Here, the "fruit of the poisonous tree" doctrine is inapplicable, because the search team did not commit a Fourth Amendment violation in executing the search warrant and arresting Laury.

### 3. A *Franks* Hearing is Unnecessary.

Finally, Laury argues that a *Frank*s Hearing is necessary, because the probable cause affidavit, which supported the issuance of the Park Avenue Residence warrant, contained material omissions. (*See* Doc. 108, at 18-20). Under *Franks*, the Supreme Court held that a defendant may challenge the veracity of statements made in an affidavit of probable cause that supports a search warrant application. 438 U.S. at 167–71. To obtain a *Frank*s hearing, the defendant must make "'a substantial preliminary showing' that the affidavit contained a false statement or omission that (1) was made knowingly and intentionally, or with reckless disregard for the truth, and (2) was material to the finding of probable cause." *United States v. Aviles*, No. 18-2967, 2019 WL 4309665, at *4 (3d Cir. Sept. 12, 2019) (citing *Franks*, 438 U.S. at 155–56).

Here, Laury contends that federal officers failed to disclose to the Court that the CW was previously charged with a *crimen falsi* offense and that he allegedly lied to investigators about the identity of his co-conspirator in the related bank robbery investigation. (Doc. 108, at 19). First, as mentioned previously, none of the CW's convictions are categorized as *crimen falsi* offenses Federal Rule of Evidence 609(a)(2). Second, Laury has failed to provide any evidence that would suggest Agent Noone intentionally or recklessly failed to disclose the CW's

10

supposed misstatement about the bank robbery. Thus, a *Franks* hearing is not necessary.

**B. Motion to Dismiss Count One of the Indictment, or, in the alternative, To Obtain a Bill of Particulars with respect to Count One of the Indictment**

Laury's motion to Dismiss Count One of the Indictment, or, in the alternative, to Obtain a Bill of Particulars with respect to Count One of the Indictment will be denied. Laury claims that the indictment should be dismissed, because it fails to apprise him of what he must be prepared to defend at trial. (Doc. 109, at 2).

An indictment must provide "a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Fed. R. Crim P. 7(c)(1). The Federal Rules of Criminal Procedure "were designed to eliminate technicalities in criminal pleadings and are to be construed to secure simplicity in procedure." *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007) (quotations omitted)."[A]n indictment is facially sufficient if it (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Stevenson*, 832 F.3d 412, 423 (3d Cir. 2016) (quotations omitted). "[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy." *Id.* at 424 (quotations omitted). Typically, an indictment is adequate when it "informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012). "[A]n indictment should be upheld unless it is so defective that it does not, by any reasonable construction, charge an offense.*" United States v. Advantage Med. Transp., Inc.*, 751 F. App'x 258, 262 (3d

Cir. 2018)(citing *United States v. Willis*, 844 F.3d 155, 162 (3d Cir. 2016)).

Here, Count One of the Indictment states:

> From in or about June 21, 2016 to on or about June 29, 2017, within the Middle District of Pennsylvania, the defendants, MICHAEL LAUREY [sic] AND AMY CASEY, did unlawfully and knowingly rent and maintain any place, whether permanently or temporarily, located at 75 Park Avenue, Wilkes-Barre, Pennsylvania, for the purpose of manufacturing, distributing or using methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 856(a)(1).

(Doc. 1, at 1). Title 21, United States Code, Section 856(a)(1) provides:

> [I]t shall be unlawful to--
> (1) knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance

21 U.S.C. § 856(a)(1). Laury concedes that the indictment presents the elements of the charge and the dates relevant to the charge. (Doc. 109, at 2). He argues, however, that Count One is insufficient, because "it fails to allege operative facts or circumstances to show that he knowingly made his property available for drug related use and manufacturing. (*Id.* at 1). More specifically, he alleges that the indictment should indicate the actions he took "to maintain the premises as a drug house." (*Id.* at 2). Such detail, however, goes above and beyond the amount of information required by relevant statute and case law. Here, the indictment tracks the statutory language, while indicating the charging statute, the elements of the offense, the controlled substance at issue, the specific location of the alleged violation, and the time period of the alleged violation. This information adequately informs Laury of what he must be prepared to defend at trial and as such Count One of the Indictment is valid.

For the same reasons, I will also deny Laury's alternative Motion for a Bill of Particulars with respect to Count One of the Indictment. A Bill of Particulars is appropriate when an indictment fails "to inform the defendant of the nature of the charges brought against him, to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately

12

described offense." *United States v. Urban*, 404 F.3d 754, 771 (3d Cir. 2005) (quoting *United States v. Addonizio*, 451 F.2d 49, 63-64 (3d Cir. 1971)). As previously stated, Count One of the Indictment is valid, eliminating any need for a Bill of Particulars under these circumstances. Thus, I will deny Laury's alternative Motion to Obtain a Bill of Particulars With Respect to Count One of the Indictment.

### IV. Conclusion

For the above stated reasons, Laury's Motion to Suppress (Doc. 107) is denied and his Motion to Dismiss the Indictment, or, in the alternative, to Obtain a Bill of Particulars with Respect to Count One of the Indictment (Doc. 109) is also denied.

An appropriate order follows.

Date: October 18, 2019 /s/ A. Richard Caputo
A. Richard Caputo
United States District Judge