UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 3:17-CR-313 |
| v. | (MANNION, J.)<br>(SAPORITO, M.J.) |
| MICHAEL LAURY, | |
| Defendant. | |

## **MEMORANDUM**

This matter is before the court on the motion for review of detention (Doc. 142) filed by the defendant, Michael Laury, a federal inmate at the Lackawanna County Prison (LCP).

Laury, who is currently awaiting trial, seeks his release from custody based on prison conditions at the LCP and the inherent risk posed by his being confined in close quarters to a large number of other inmates during the COVID-19 global pandemic given his health risk of being an asthmatic since childhood. In his motion, Laury has certified that the assigned assistant United States attorney does not concur in his motion. (Doc. 142, at 2). Defense counsel filed a notice indicating that the parties have been unable to resolve the motion. (Doc. 144). Laury filed a brief in support of his motion (Doc. 143) and the government filed a brief

1

in opposition to the defendant's motion. (Doc. 145). We conducted a video hearing, with Laury's consent, on April 24, 2020. The matter is ripe for a decision. For the reasons set forth herein, we will deny the motion.

I. *Statement of Facts*

A federal grand jury indicted Laury on October 17, 2017, charging him with maintaining and renting a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1). (Doc. 1). On October 19, 2017, he appeared before the undersigned for an initial appearance and arraignment where he pled not guilty to the charges. He returned on October 24, 2017, for a detention hearing. At the conclusion of the hearing, we ordered Laury detained, and he has been in custody since. (Doc. 24). On January 8, 2018, after a hearing, Laury's motion to review his detention was denied by the Honorable Malachy E. Mannion. (Doc. 32). On June 4, 2019, after a hearing, Laury's motion to review his detention was denied by the late Honorable A. Richard Caputo.

A pretrial conference was originally set for March 19, 2020, and continued to May 18, 2020. On March 27, 2020, the pretrial conference was continued indefinitely due to the COVID-19 crisis. *See generally* General Order 20-01 (Mar. 13, 2020) (continuing all in-person criminal

hearings for a period of sixty days), *supplemented by* General Order 20-01 Supp. (Mar. 18, 2020), *extended by* General Order 20-10 (Apr. 8, 2020) (extending duration of general continuance through May 31, 2020).

In his brief, Laury seeks his release pursuant to 18 U.S.C. § 3142 based on the COVID-19 pandemic, the alleged adverse conditions of LCP, and his increased risk of exposure to COVID-19 because he suffers from asthma; he also argues that continued pretrial confinement under these conditions may violate his Fifth Amendment due process rights under *Helling v. McKinney*, 509 U.S. 25, 28 (1993).[1] (Doc. 143, at 3-4). The

---

[1] The movant's brief argues that the conditions of Laury's confinement may violate his Eighth Amendment rights, but we note that he is a pretrial detainee awaiting trial, not a convicted prisoner. Rather than the Eighth Amendment, it is the Fifth Amendment's due process clause that protects a pretrial detainee's liberty interest to be free from conditions of confinement that amount to "punishment" of the detainee. *See Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979); *see also Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 320 n.5 (3d Cir. 2005); *Padgett v. Stein*, 406 F. Supp. 287, 295 (M.D. Pa. 1975). But because "the Due Process rights of a pretrial detainee are 'at least as great as the Eighth Amendment protections available to a convicted prisoner,'" *Boring v. Kozakiewicz*, 833 F.2d 468, 471 (3d Cir. 1987), a pretrial detainee's claims concerning conditions of confinement are subject to the very same "deliberate indifference" standard as used in Eighth Amendment cases. *See Woloszyn*, 396 F.3d at 319–20; *Boring*, 833 F.2d at 471–73; *see also Putman v. Gerloff*, 701 F.2d 63, 64 & n.2 (8th Cir. 1983) (treating counseled pretrial detainee's Eighth Amendment claim as a due process claim instead); *Duran v. Merline*, 923 F. Supp. 2d 702, 719 (D.N.J. 2013) (applying *Helling* to a pretrial detainee).

government contends that Laury's motion should be denied because the generalized health risks of COVID-19, concededly unknown at the time the court issued its detention orders, do not warrant reconsideration of our original order of detention, nor does it provide a compelling reason to order his temporary release. (Doc. 145). In addition, the government maintains that Laury continues to represent a flight risk and a danger to the community, and that no conditions or combination of conditions would ensure his appearance for sentencing and the safety of the community, notwithstanding the health risks posed by COVID-19—risks that will continue to exist regardless of his detention status. (*Id*).

We granted Laury's request for a hearing on the motion, which we conducted by videoconference on April 24, 2020. At the hearing, Laury testified on his own behalf. For the reasons discussed herein, we will deny Laury's motion.

## II. Discussion

### a. COVID-19 Global Pandemic

We are mindful of the unprecedented magnitude of the COVID-19

pandemic and the extremely serious health risks it presents.[2] "COVID-19 is the infectious disease caused by the novel coronavirus." *United States v. Roeder*, ___ Fed. App'x ___, 2020 WL 1545872, at *1 (3d. Cir. Apr. 1, 2020) (per curiam). We are also cognizant that the President of the United States has declared a national emergency and the Governor of Pennsylvania has declared a state of emergency and issued a stay-at-home order through April 30, 2020, which has been extended to May 8, 2020. Further, the Governor has ordered all schools to remain closed for the remainder of the 2019-2020 academic school year. We also recognize that public health officials have strenuously encouraged the public to practice "social distancing," to hand-wash and/or sanitize frequently, and to avoid close contact with others—all of which present challenges in detention facilities. *See Roeder*, 2020 WL 1545872, at *2; *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *2 (D. Md. Mar. 17, 2020).

### b. Conditions of LCP

Laury alleges that LCP has placed inmates on lockdown most of the

---

[2] World Health Org., *WHO Characterizes COVID-19 as a Pandemic* (Mar. 11, 2020), https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen.

day. He contends that during his recreation time, it is difficult or impossible for those inmates most at risk, like himself, to engage in social distancing and self-quarantine precautions as recommended by the Centers for Disease Control and Prevention. They are not provided masks or gloves and they are limited to law library privileges just one hour per week. He also concludes that LCP is inadequately protecting inmates from the risk of contracting COVID-19.

The government proffered in their brief and at the hearing that LCP has reported no positive COVID-19 cases among its inmate populations and only one corrections officer who has tested positive but since recovered. (Doc. 145, at 9). All inmates were informed and placed on lockdown. In addition, LCP sent 22 staff members home to self-quarantine solely as a precautionary measure. (*Id.* at 10). We further take judicial notice of recent policies and procedures adopted by LCP to prevent or limit the spread of COVID-19 within the prison. *See Shakur v. Costello*, 230 Fed. App'x 199, 201 (3d Cir. 2007) (per curiam) (taking judicial notice of county prison procedures). Under these new policies and procedures, LCP has suspended contact visits, regular visitation, and visitation from volunteers, including religious leaders. It has

implemented aggressive sanitation programs and suspended all programs that utilize "outside" employees. It has prohibited individuals other than prison and medical staff to proceed any further than the reception area. It has limited attorney visits with inmates to meetings through a glass partition in a lawyer visitation room unless written permission is granted by the warden or the deputy warden. It has cancelled all conferences and out-of-county training. It has provided for weekly contact with officials from the state department of corrections. It has posted educational flyers in the blocks and in the reception area. It has also implemented body temperature screening checks for all employees and lawyers as they enter the facility. *United States v. Mendoza*, No. 5:20-mj-00011, 2020 WL 1663361, at *3 & n.4 (M.D. Pa. Apr. 3, 2020).

### c. 18 U.S.C. § 3142(f)(2)—Reconsideration of detention orders

Laury seeks release because of the existence of COVID-19, the alleged adverse conditions of LCP, and his increased risk of exposure to COVID-19 because he suffers from asthma. The existence of COVID-19 and its increase of risk to individuals with asthma were not known to Laury at the time of his earlier detention hearings. The Bail Reform Act

7

provides that a defendant who is detained pending trial may move the court to reconsider its detention order if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that it has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of any other person and the community. 18 U.S.C. § 3142(f)(2). At the original detention hearing before the undersigned on October 24, 2017, we found that the presumption under 18 U.S.C. § 3142(e)(3) applied.[3] We found that the defendant did not introduce sufficient evidence to rebut the presumption and no combination of conditions would ensure Laury's appearance at trial and the safety of the community.

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the original detention hearing, we concluded that Laury be detained pending trial because the government proved by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other

---

[3] The rebuttable presumption in 18 U.S.C. § 3142(e)(3) reflects a Congressional finding that drug trafficking is a danger to the community and drug traffickers pose special flight risks.

person or the community. We also found that Laury did not produce the quantum of evidence necessary to overcome the presumption. In addition to findings made on the record at the hearing, the reasons for detention included the following: his extensive prior criminal history which commenced at the age of 19; his numerous incarcerations; his pattern of returning to illicit drug use upon his release from incarceration; his lack of stable employment; his use of aliases; and that drug trafficking is an inherent danger to the community. Therefore, his detention was ordered. (Doc. 26).

Here, the government proffered that law enforcement determined that Laury permitted two individuals—Mark Heath and Shawn Melleski—to operate a methamphetamine laboratory in the lower floor of Laury's Wilkes-Barre, Pennsylvania, residence. In exchange, Laury and his codefendant, Amy Casey, received free crystal methamphetamine for their personal use. Law enforcement officials shut down the laboratory on June 29, 2017, when executing a federal search warrant at the residence. (Doc. 145, at 2). The government further proffered that multiple witnesses are expected to testify that Laury, a methamphetamine user, permitted Heath and Melleski to operate the

9

methamphetamine laboratory and stay rent-free, in exchange for free crystal meth. (*Id.* at 18). Witnesses are expected to testify about Laury's assistance in operating the methamphetamine laboratory, including burning the refuse produced during the meth-making process, and helping Heath and Melleski obtain ingredients to manufacture the methamphetamine. (*Id.*)

In his brief in support of the instant motion, Laury argues that he is in a high-risk category because he suffers from asthma. (Doc. 143, at 3). That circumstance does not change despite the existence of the coronavirus pandemic. At best, Laury presents only speculative arguments that his confinement in the LCP increases the health risks posed by COVID-19.

At the video hearing on April 24, 2020, Laury testified that he has been an asthmatic since childhood. Over the course of his life, he has been hospitalized, he required the use of a nebulizer and an inhaler, and he took prescribed steroid medication. His asthma condition is exacerbated upon exertion or cooking certain foods such as onions. His last hospitalization occurred over 10 years ago. There have been times when he resorted to some self-help remedies, such as opening his freezer to

breathe in cool air. Since his incarceration at LCP, he has not been hospitalized, nor has he had the need to use a nebulizer or an inhaler. If released, Laury stated that he would live with his mother at her address in Wilkes-Barre, Pennsylvania. He testified that he is willing to abide by all conditions of release, including house arrest, and he is willing to look for work in the construction industry or as a mechanic. Although Laury's mother did not testify at the hearing, that fact alone is not dispositive of his motion as we are not inclined to release him at this crucial time in the progression of his case.

Laury's motion is found wanting for several reasons. Other than a single guard who appears to have had no contact with the movant, there have been no confirmed cases of COVID-19 in the LCP. Moreover, LCP has implemented new policies and procedures to protect its population as referenced above. There is no evidence that such measures are, or have been, inadequate. Our court has temporarily continued all court proceedings through May 31, 2020, which should ameliorate a criminal defendant's concerns about assisting his or her attorney in the preparation of a defense. Further, we are confident that LCP will respect the privileged nature of the communications between attorneys and their

inmate-clients, as nothing to the contrary has been alleged or otherwise brought to our attention. Finally, despite Laury's testimony that if released he will abide by all conditions of release, his past conduct guides us on his potential future conduct.

In the absence of any evidence that LCP is not providing—or is unable to provide—appropriate medical care, we are not persuaded that Laury should be released. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (recognizing that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"). Accordingly, we are not persuaded to reconsider our order of detention.

### d. *18 U.S.C. § 3142(i)—Temporary Release*

In his brief, Laury also seeks release generally under 18 U.S.C. § 3142. We shall presume that Laury is requesting release under 18 U.S.C. § 3142(i) which allows a judicial officer, by subsequent order, to permit the temporary release of a person to the extent that the judicial officer determines such release to be necessary for preparation of the

person's defense or another compelling reason. He cites the same reasons above in support of his position that the global pandemic and his heightened health risks constitute "another compelling reason" to justify his release.

Section 3142(i) constitutes a limited safety valve provision, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i). *See United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases). The Court must carefully and impartially apply the proper legal standards that govern an individual's particular request for relief. *Roeder*, 2020 WL 1545872, at *3.

Until recent events spawned by the COVID-19 global pandemic, defendants seeking release under § 3142(i) generally did so because it was necessary to prepare the person's defense. Those courts finding "another compelling reason," however, typically granted release "sparingly to permit a defendant's release where, for example, he is

13

suffering from a terminal illness or serious injuries." *United States v. Lee*, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020) (quoting *United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)); *see also United States v. Scarpa*, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS, which could no longer be managed by correctional authorities); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D.P.R. 2002) (permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the United States Marshals Service refused to take custody of him until his wounds closed).

A defendant is not entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation. *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan., Mar. 25, 2020). We must make an individualized determination as to whether COVID-19 concerns are compelling in a particular case to justify temporary release under § 3142(i). *Id.* A decision on a motion seeking

release under § 3142(i) entails an informed judgment assessing both individual health concerns and broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary."

*Id.* at *3.

We incorporate our analysis above under § 3142(f)(2) to arrive at the same conclusion here. While the court remains sympathetic to Laury's concerns regarding the possibility of health complications caused by the COVID-19 virus, "[s]uch speculation does not constitute a 'compelling reason' for temporary release." *United States v. Loveings*, Cr. No. 20-51, 2020 WL 1501859, at *3 (W.D. Pa. Mar. 30, 2020); *see also United States v. Pritchett*, No. CR 19-280, 2020 WL 1640280, at *3 (W.D. Pa. Apr. 2, 2020) (despite being sympathetic to defendant's medical

15

conditions, including a diagnosis of asthma, speculation concerning possible future conditions in jail does not constitute a "compelling reason" for temporary release.); *United States v. Jones*, No. 2:19-CR-00249-DWA, 2020 WL 1511221, at *3 (W.D. Pa. Mar. 29, 2020) (holding that, while the defendant suffered from hypertension, sleep apnea, and asthma, and it is true that individuals with respiratory issues are at higher risk for COVID-19, his present health conditions were not sufficient to establish a compelling reason for release in light of the danger to the community posed by his release and the efforts undertaken at the jail to combat the spread of the virus) (citing *United States v. Davis*, No. 19-1604, 2020 U.S. App. LEXIS 9987 (3d Cir. Mar. 20, 2020)).

The mere presence of the virus, even in the detention setting, does not automatically translate to the release of a person accused. *United States v. Williams*, No. PWG-19-8, 2020 WL 1643662, at *2 (D. Md. Apr. 2, 2020) (denying defendant's motion even where at least five inmates had tested positive for COVID-19 and defendant suffered from allergies and asthma); *United States v. Bilbrough*, No. TDC-20-0033, 2020 WL 1694362 (D. Md. Apr. 7, 2020) (affirming magistrate judge's denial of motion by defendant who suffered from diabetes); *United States v.*

16

*Williams*, No. PWG-13-544, 2020 WL 1434130 (D. Md. Mar. 24, 2020) (denying a 67-year-old defendant's motion); *United States v. Penaloza*, No. TDC 19-238, 2020 WL 1555064 (D. Md. Apr. 1, 2020) (denying motion of defendant who suffered from a heart murmur); *United States v. Jefferson*, No. CCB-19-487, 2020 WL 1332011 (D. Md. Mar. 23, 2020) (denying motion of asthmatic defendant). Thus, we are left to speculate whether Laury's continued incarceration would likely increase his risk of harm.

### e. Fifth Amendment Due Process

The defendant contends that his continued confinement during the potential exposure to COVID-19 "may" constitute unconstitutional punishment, and thus a violation of his Fifth Amendment due process rights. (Doc. 143, at 4). Laury relies upon *Helling v. McKinney*, 509 U.S. 25, 28 (1993), where the plaintiff was assigned to a cell with a smoker, and despite that he had not yet suffered harm, the Supreme Court held that he stated a cause of action under the Eighth Amendment as his exposure to tobacco smoke posed an unreasonable risk of serious damage to his future health. In response, the government argues that Laury, a pretrial detainee, cannot challenge his custody or the conditions of his

confinement through an Eighth Amendment claim. In support of that position, the government relies upon *Hubbard v. Taylor*, 399 F.3d 150, 164, 166 (3d Cir. 2005), and *Kost v. Kozakiewicz*, 1 F.3d 179, 188 (3d Cir. 1993). (Doc. 145, at 31 n.17). As noted in the margin above, the United States is correct that the Eighth Amendment is inapposite here, but the substance of this argument by the defendant properly sounds in the Fifth Amendment's due process clause and should be considered on its merits. *See Putman v. Gerloff*, 701 F.2d 63, 64 & n.2 (8th Cir. 1983) (treating counseled pretrial detainee's Eighth Amendment claim as a due process claim instead).

A federal pretrial detainee's constitutional rights flow from the due process clause of the Fifth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *United States v. Cook*, No. 3:16-CR-00312, 2020 WL 1939612, at *5 (M.D. Pa. Apr. 22, 2020). "Under *Bell*, a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012). "Absent a showing of an expressed

intent to punish on the part of the detention facility officials, . . . if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell*, 441 U.S. at 538–39; *Cook*, 2020 WL 1939612, at *5. Moreover, we note that several federal district courts have recently rejected similar Fifth Amendment challenges to pre-trial or pre-sentencing detention based on COVID-19. *See United States v. Stevens*, No. 19-350-02, 2020 WL 1888968, at *5 (E.D. Pa. Apr. 16, 2020) (collecting cases).

Like the defendant in *Cook*, Laury does not make a forceful claim that his constitutional rights have been violated. He has not been able to demonstrate that that LCP is unable or unwilling to take the necessary precautions to prevent or limit the spread of COVID-19 within the prison. Rather, the evidence shows that LCP is implementing the procedures recommended by the CDC, and thus far, those measures have been successful in mitigating and controlling the spread of the virus.

However, mindful of the rapidly evolving conditions in prisons throughout the nation as well as the COVID-19 pandemic, we will entertain a renewed request for release if at some point in the future it

becomes clear that there are compelling reasons to justify the defendant's release. *United States v. Sanchez*, No. 1:19-cr-00152, 2020 WL 1814159 *7 (M.D. Pa. Apr. 9, 2020) (citing *United States v. Lee*, No 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020)).

### III.  *Conclusion*

For all the reasons set forth above, Laury has failed to demonstrate a compelling reason under 18 U.S.C. §§ 3142(f)(2) and (i) for reconsideration of the Court's prior orders of detention. Therefore, his motion is denied.

An appropriate order follows.

***s/Joseph F. Saporito, Jr.***
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: April 28, 2020